Case #:  **1:25-cv-06135–MKB–LKE**

# United States District Court

## EASTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO
INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY, and
GEICO CASUALTY COMPANY,

*Plaintiffs*

—v—

ADVANCED MEDICAL SUPPLIES, INC.,
FATIMA ELKHETTAB, and
JOHN DOE DEFENDANTS "1" through "10",

*Defendants*

## ANSWER

CORY HAL MORRIS (CM5225)
**2295 NW CORPORATE BOULEVARD, SUITE 117
BOCA RATON, FLORIDA 33431**

VICTOR JOHN YANNACONE, JR.,  *of counsel*
Email: barrister@yannalaw.com

The Law Offices of Cory H. Morris
Email: info@coryhmorris.com
*Attorneys for Defendants*

To:                     BARRY I. LEVY, Esq.
516 357 3149
Email: barry.levy@rivkin.com

MICHAEL VANUNU, Esq.
516-357-3337
Email: michael.vanunu@rivkin.com

JOANNA ROSENBLATT, Esq.
631-357-3000
Email: joanna.sobel@rivkin.com

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs;* and

Government Employees Insurance Company,
GEICO Indemnity Company,
GEICO General Insurance Company and GEICO Casualty
Company

## ANSWER

All Defendants, by their attorneys, the The Law Offices of Cory H. Morris and Victor John Yannacone, jr. *of counsel* set forth the following as in for their answer to plaintiffs' unverified complaint.

## NATURE OF ACTION

1.      GEICO brings this action to recover more than $600,000.00 that Defendants have wrongfully obtained from GEICO by submitting and causing to be submitted hundreds of fraudulent no-fault insurance charges related to medically unnecessary, illusory, and otherwise non-reimbursable durable medical equipment ("DME") and orthotic devices ("OD") (e.g. cervical traction equipment, lumbar sacral supports ("LSO"), exercise equipment, shoulder and knee orthoses, etc.) (collectively, the "Fraudulent Equipment") to individuals involved in automobile accidents in a systematic, predetermined fashion, without regard for genuine patient care. The Fraudulent Equipment is alleged have been provided by Advanced Med Supplies and Elkhettab (collectively, the "DME Defendants") to individuals who claimed to have been involved in automobile accidents in New York and were eligible for coverage under no-fault insurance policies issued by GEICO ("Insureds").

1.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 1.

2.      DME Defendants, in conjunction with others not presently identifiable to GEICO, devised a fraudulent scheme that involved obtaining prescriptions for medically unnecessary DME/OD from purported healthcare providers (the "Referring Providers") who were working out of No-Fault clinics in the New York metropolitan area through the payment of kickbacks and other financial incentives, and using the prescriptions for the medically unnecessary DME/OD to submit billing to GEICO and the New York automobile industry containing numerous fraudulent representations concerning the Fraudulent Equipment allegedly provided to Insureds. Through the fraudulent scheme, DME Defendants billed GEICO alone more than $2.3 million.

2.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 2.

3.      By this action, GEICO seeks to recover more than $600,000.00 that has been wrongfully obtained by the DME Defendants, and further seeks a declaration that it is not legally obligated to pay reimbursement of more than $700,000.00 in pending no-fault insurance claims that have been submitted through Advanced Med Supplies because:

(i)      DME Defendants billed GEICO for Fraudulent Equipment pursuant to a fraudulent scheme that was designed and implemented to exploit the patients for financial gain so as to benefit the DME Defendants and others not presently known (i.e. the John Doe

1

Defendants), without regard for genuine patient care, and which included dispensing Fraudulent Equipment that was not medically necessary and which was prescribed pursuant to predetermined fraudulent protocols, including prescriptions secured through collusive arrangements, and were otherwise illegitimate because they contained photocopied or otherwise duplicated signatures;

3. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 3(i).

(ii)    DME Defendants billed GEICO for Fraudulent Equipment that was provided – to the extent actually provided – as a result of decisions that were made by laypersons, not based upon prescriptions issued by the Referring Providers who are licensed to issue such prescriptions; and

4. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 3(ii).

(iii)    To the extent that any Fraudulent Equipment was provided to Insureds, the bills for the Fraudulent Equipment submitted to GEICO by the DME Defendants fraudulently misrepresented the type and nature of the Fraudulent Equipment purportedly provided to Insureds and misrepresented the permissible reimbursement rate for the Fraudulent Equipment.

5. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 3(iii).

4. The Defendants fall into the following categories:

(i)    Defendant Advanced Med Supplies is a Nevada corporation, authorized to do business in New York, that is used as the billing arm of the fraudulent scheme – it purports to provide Fraudulent Equipment to persons who were allegedly injured in motor vehicle accidents, and bills New York automobile insurance companies, including GEICO.

6. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 4(i) except admit "Defendant Advanced Med Supplies is a Nevada corporation, authorized to do business in New York."

(ii)    Defendant Elkhettab is one of the primary drivers of the fraudulent scheme – she owns, operates, and controls Advanced Med Supplies and uses it to submit bills to GEICO and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims.

2

7.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 4(ii) except admit Fatima Elkhettab "owns, operates, and controls Advanced Med Supplies"

(iii)    The John Doe Defendants are the other individuals involved in the fraudulent scheme – while they are not presently identifiable, they have  associated  and  colluded with  DME  Defendants  to  further  drive  and financially benefit from the fraudulent scheme committed against GEICO and other New York automobile insurers through their associations with the Referring Providers and control of various medical offices that purportedly treat a high-volume of No-Fault insurance patients (the "Clinics").

8.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 4(iii).

5.    As discussed below, the DME Defendants at all times have known that the claims for Fraudulent Equipment submitted to GEICO were fraudulent because:

(i)    The billing submitted to GEICO and other New York automobile insurers was pursuant to a fraudulent scheme that was designed and implemented to exploit the patients for financial gain so as to benefit the DME Defendants and others not presently known (i.e. the John Doe Defendants), without regard for genuine patient care, and which included dispensing Fraudulent Equipment that was not medically necessary and prescribed pursuant to predetermined fraudulent protocols, including prescriptions secured through collusive arrangements, and were otherwise illegitimate because they contained photocopied or otherwise duplicated signature;

9.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 5(i) which refer to them, and Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph which do not refer to them.

(ii)    The  Fraudulent Equipment was provided – to the extent any was provided – as a result of decisions made by laypersons, not based upon prescriptions issued by healthcare providers who are licensed to issue such prescriptions;

3

10. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 5(ii)

(iii)     To the extent that any Fraudulent Equipment was provided to Insureds, the bills for the Fraudulent Equipment submitted to GEICO by the DME Defendants fraudulently misrepresented the type and nature of the Fraudulent Equipment purportedly provided to Insureds and misrepresented the permissible reimbursement rate for the Fraudulent Equipment.

11. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 5(iii)

6.     As such, the DME Defendants do not now have – and never had – any right to be compensated for the Fraudulent Equipment billed to GEICO through Advanced Med Supplies.

12. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 6.

7.     The chart attached hereto as Exhibit "1" sets forth a representative sample of the fraudulent claims that have been identified to date that the DME Defendants submitted, or caused to be submitted, to GEICO under the name of Advanced Med Supplies.

13. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 7.

8.     Defendants' fraudulent scheme against GEICO and the New York automobile insurance industry began no later than 2021 and has continued uninterrupted through the present day, as the DME Defendants continue to seek collection on pending charges for the Fraudulent Services.

14. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 8.

9.     As a result of the Defendants' fraudulent scheme, GEICO has incurred damages of more than $600,000.00

15. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 9.

4

# THE PARTIES

10.     Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

16.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 10.

11.     Defendant Advanced Med Supplies is a Nevada Corporation that was licensed to do business in New York State on or about May 15, 2014. Advanced Med Supplies has its principal place of business in Santa Ana, California. At all times, Advanced Med Supplies was owned and operated by Elkhettab

17.   Defendants admit the allegations contained in the foregoing paragraph of the complaint numbered 11, but Defendants deny each and every allegation contained in the remainder of the foregoing paragraph of the complaint numbered 11.

12.     Defendant Elkhettab resides in and is a citizen of California and owns and operates Advanced Med Supplies. Elkhettab, at all relevant times, has been one of the primary drivers of the fraudulent scheme, owns, operates, and controls Advanced Med Supplies, has associated with others not presently identifiable to obtain the illegitimate prescriptions from the Referring Providers and used those prescriptions to submit bills to GEICO and other New York automobile insurance companies for the Fraudulent Equipment.

18.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 12 except admits "Defendant Elkhettab resides in and is a citizen of California and owns and operates Advanced Med Supplies."

13.     At all relevant times, Elkhettab and Advanced Med Supplies have transacted business within New York, regularly done business in New York, engaged in a persistent course of conduct in New York, and derived substantial revenue from the dispensing of the Fraudulent Equipment in New York, including renting a post office box from Manhattan Mailboxes located at 302 W. 12th St., New York, NY 10014.

5

19. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 13 except admits that "Elkhettab and Advanced Med Supplies have transacted business within New York."

14. Elkhettab is not and has never been a licensed healthcare provider and entered into unlawful arrangements with the John Doe Defendants in exchange for referrals to Advanced Med Supplies for the Fraudulent Equipment

20. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered  14 except admit "Elkhettab is not and has never been a licensed healthcare provider."

15. Upon information and belief, the John Doe Defendants are citizens of New York and include individuals who are not presently identifiable but (i) are associated with the Clinics, ii) are unlicensed individuals who unlawfully own and control the Clinics and the relationships with the Referring Providers, and (iii) have conspired with Advanced Med Supplies and Elkhettab to further the fraudulent scheme committed against GEICO and other New York automobile insurers for their own economic benefit.

21. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 15, except Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered which alleges Defendants conspired with anyone as alleged.

## JURISDICTION AND VENUE

22. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 16, 17, 18, 19, and deny any previous paragraph or portion thereof not previously denied hereto, and

23. Defendants take no position with respect to the allegations which proposed to cite, interpret, or common upon legal matters, which are to be determined by a court of component jurisdiction at a later stage in this action and which are contained in those paragraphs of the complaint numbered 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47 and deny any such paragraph, previous paragraph or portion thereof not previously denied.

48.    Beginning in 2021, the DME Defendants devised and implemented a complex fraudulent scheme in which they used Advanced Med Supplies as a vehicle to bill GEICO and other New York automobile insurers millions in No-Fault Benefits to which they were never entitled to receive.

24. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 48.

49.    To date, the DME Defendants have wrongfully obtained more than $600,000.00 from GEICO, and there is more than $700,000.00 in additional fraudulent claims that have yet to be adjudicated, but for which the DME Defendants continue to seek payment from GEICO.

25. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 49.

50.    Elkhettab used Advanced Med Supplies to directly obtain No-Fault benefits and maximize the amount of No-Fault benefits she could obtain by submitting fraudulent bills to GEICO and other automobile insurers seeking reimbursement for the Fraudulent Equipment.

26. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 50.

51.    DME Defendants were able to perpetrate the fraudulent scheme against GEICO described below by obtaining illegitimate prescriptions for Fraudulent Equipment purportedly issued by the Referring Providers because of agreements with the John Doe Defendants.

7

27.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 51.

52.  Elkhettab did not market or advertise Advanced Med Supplies to the general public. Advanced Med Supplies lacked any genuine retail or office location and operated without any legitimate efforts to attract patients who might need DME or healthcare practitioners who might legitimately prescribe DME. Similarly, Elkhettab did virtually nothing that would be expected of the owner of a legitimate DME supply company to develop its reputation in the medical community or to attract patients who might need DME or healthcare practitioners who might legitimately prescribe DME.

28.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 52.

53.  In fact, since its formation, Advanced Med Supplies has lacked any genuine retail or office location in New York State. Advanced Med Supplies operated from its California address and a New York, New York post office box.

29.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 53 except admit that it operates from California and New York,

54.  Instead, Elkhettab entered into collusive agreements with the John Doe Defendants who were associated with both the Clincs and the Referring Providers pursuant to which kickbacks and other financial incentives were paid so that the DME Defendants would receive large volumes of prescriptions from the Referring Providers in relation to Insureds who were being treated at the Clinics.

30.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 54.

55.  The prescriptions obtained by the DME Defendants for Fraudulent Equipment were never given to the Insureds to fill, but as part of the fraudulent scheme, routed directly to the DME Defendants from the John Doe Defendants to ensure that the Insureds did not present the prescriptions to legitimate DME suppliers, who would likely question the legitimacy of the prescription, the volume of prescriptions or the need for the DME/OD in the first instance

31.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 55.

56.     The prescriptions obtained by the DME Defendants for Fraudulent Equipment DME and OD included prescriptions for Fraudulent Equipment, which the DME Defendants used to (i) as a basis to purportedly provide and bill for whatever DME/OD the DME Defendants decided to dispense, not what was determined based upon a prescription by a licensed healthcare professional; and (ii) misrepresented to GEICO and other automobile insurers the nature and quality of the items intended by the prescriptions to inflate the maximum reimbursement rate they were entitled to receive.

32.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 56.

57.     After obtaining prescriptions for Fraudulent Equipment as a result of their collusive relationships with the John Doe Defendants, the DME Defendants in turn then billed GEICO for: (i) Fraudulent Equipment that was not reasonable or medically necessary; (ii) Fraudulent Equipment that was not based on valid prescriptions from licensed healthcare providers; (iii) Fraudulent Equipment that did not represent the HCPCS codes contained in the bills to GEICO; and/or (iv) Fraudulent Equipment with inflated charges that far exceeded the value of the actual products they provided to GEICO's Insureds.

33.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 57.

58.     DME Defendants obtained prescriptions that formed the basis to submit fraudulent billing to GEICO through predetermined fraudulent protocols that were established between and among the DME Defendants, John Doe Defendants and the Referring Providers.

34.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 58.

59.     Through these predetermined fraudulent protocols, the DME Defendants obtained prescriptions for Fraudulent Equipment that were not medically necessary and were created solely to financially enrich the DME Defendants and John Doe Defendants, not to genuinely treat the Insureds.

35.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 59.

60.     No legitimate physician, chiropractor, other licensed healthcare provider, or professional entity would permit prescriptions for Fraudulent Equipment to be issued upon the fraudulent protocols described below.

9

36.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 60.

61.     As set forth below, the extent of the Insureds' motor vehicle accidents, physical conditions, and conservative treatment plans demonstrate a pattern of prescribing and dispensing Fraudulent Equipment to the Insureds that were not medically necessary to treat the Insureds post-accident condition.

37.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 61.

62.     Virtually all of the Insureds who were prescribed the Fraudulent Equipment identified in Exhibit "1", were involved in relatively minor and low-impact "fender-bender" accidents, to the extent that they were involved in any actual accidents at all. Concomitantly, almost none of the Insureds identified in Exhibit "1", whom the Referring Providers purported to treat, suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience.

38.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 62,

63.     In keeping with the fact that the Insureds identified in Exhibit "1" suffered only minor injuries – to the extent they had any injuries at all – as a result of the relatively minor accidents, many of the Insureds did not seek medical treatment at any hospital as a result of their accidents.

39.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 63.

64.     To the extent the Insureds in the claims identified in Exhibit "1" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis and then sent on their way with nothing more serious than a minor soft tissue injury, such as a sprain or strain.

40.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 64.

65.     However, despite virtually all the Insureds being involved in relatively minor and low-impact accidents and only suffering from sprains and strains – to the extent that the Insureds were actually injured – virtually all of the Insureds were subject to extremely similar treatment and medically unnecessary protocols, including nearly identical prescriptions for Fraudulent Equipment.

41. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 65.

66. The prescriptions for Fraudulent Equipment that were purportedly issued to the Insureds identified in Exhibit "1" were issued pursuant to predetermined fraudulent protocols set forth with the John Doe Defendants and the Referring Providers, and not because the Fraudulent Equipment was medically necessary for each Insured based upon his or her individual symptoms or presentations.

42. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 66.

67. Instead, the predetermined fraudulent protocols were created based upon how the John Doe Defendants, and others including the DME Defendants, could profit from exploiting prescriptions purportedly issued by the Referring Providers.

43. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 67.

68. In keeping with the fact that the prescriptions were based upon predetermined fraudulent protocols, not what was medically necessary for the Insureds, virtually all of the Insureds identified in Exhibit "1" who were treated by the same Referring Provider routinely received multiple items of Fraudulent Equipment of virtually the same type.

44. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 68.

69. For example, approximately 100% of the Insureds who were treated by Wendy Keiser DC ("Keiser") who received DME and/or OD from Advanced Med Supplies were prescribed an LSO billed to GEICO under HCPCS L0631 and approximately 99% were prescribed a cervical traction device billed to GEICO under HCPCS E0855.

45. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 69.

70. Similarly, approximately 98% of the Insureds who were treated by Amram Weiner, DC ("Weiner") who received DME and/or OD from Advanced Med Supplies were prescribed an LSO and "H.E.P. (Straps, Exercise Ball and Bands)" billed to GEICO under HCPCS L0631 and A9300 respectively, and approximately 97% were prescribed a cervical traction device billed to GEICO under HCPCS E0855.

11

46.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 70.

71.     Similarly, approximately 96% of the Insureds who were treated by Thomasina Striano, DC ("Striano") who received DME and/or OD from Advanced Med Supplies were prescribed "H.E.P. (Anchor Straps, Ankle Cuffs, Heavy Resistance Tube, Medium Resistance  Tube, Exercise Ball, Jump Rope, Hand Grip, Mesh Backpack & Workout Brochure)" billed to  GEICO under HCPCS A9300, approximately 92% were prescribed an LSO billed to GEICO under HCPCS L0631 and approximately 84% were prescribed a cervical traction device billed to GEICO under HCPCS E0855.

47.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 71.

72.     In a legitimate setting, when a patient injured in a motor vehicle accident seeks treatment from a healthcare provider, the patient's subjective complaints are evaluated, and the treating provider will direct a specific course of treatment based upon the patient's individual symptoms or presentation.

48.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 72.

73.     Furthermore, in a legitimate setting, during the course of a patient's treatment, a healthcare provider may – but does not always – prescribe DME and/or OD that should aid in the treatment of the patient's symptoms. The specific DME and/or OD that would be prescribed to aid the treatment of the patient would always directly relate to the patients' individual symptoms or presentation.

49.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 73.

74.     In determining whether to prescribe DME and/or OD to a patient – in a legitimate setting – a healthcare provider should evaluate multiple factors, including: (i) whether the specific DME and/or OD could have any negative effects based upon the patient's physical condition and medical  history; (ii) whether the DME and/or OD is likely to  help improve  the  patient's complained of condition; and (iii) whether the patient is likely to use

12

the DME and/or OD. In all circumstances, any prescribed DME and/or OD would always directly relate to each patient's individual symptoms or presentation.

50.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 74.

75.      There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident. For example, an individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

51.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 75.

76.      If a healthcare provider determines that DME and/or OD is medically necessary after taking into account a patient's individual circumstances and situations, in a legitimate setting, the healthcare provider would indicate in a contemporaneous medical record, such as an evaluation report, what specific DME and/or OD was prescribed, why it was medically necessary, or how it will help the Insureds.

52.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 76.

77.      Further, in a legitimate setting, when a patient returns for an examination after being prescribed DME and/or OD, the healthcare provider will inquire – and appropriately report – whether the previously prescribed DME and/or OD aided the patient's subjective complaints. Such information is typically included so the healthcare provider can recommend a further course of treatment regarding the previously prescribed DME and/or OD or newly issued DME and/or OD.

53.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 77.

78.      As medically necessary DME is based upon the subjective conditions of the patient's individual needs, it is extremely improbable – to the point of impossibility – that Insureds involved in automobile accidents who were treated at a specific Clinic would routinely receive prescriptions for numerous items of Fraudulent Equipment of substantially the same type.

54. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 78.

79.     Insureds routinely receiving multiple items of identical Fraudulent Equipment would, by extension, mean Insureds routinely reported to a specific Referring Provider complaining of the exact same symptoms.

55. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 79.

80.     It is extremely improbable – to the point of impossibility – that a substantial number of Insureds who were treated at different Clinics with different Referring Providers around the  New York metropolitan area and were purportedly issued Fraudulent Equipment from Advanced Med Supplies, would require numerous items of DME or OD of substantially the same type.

56. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 80.

81.     Here, and in keeping with the fact that the prescriptions provided to the DME Defendants were for medically unnecessary Fraudulent Equipment obtained as part of an insurance scheme in which there were predetermined fraudulent protocols, virtually all the Insureds  identified in Exhibit "1" that were treated at a specific Clinic were routinely issued numerous items of Fraudulent Equipment of substantially the same type, despite being different ages, in different physical conditions, and involved in different motor vehicle accidents.

57. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 81.

82.     In also in keeping with the fact that the prescriptions for Fraudulent Equipment used by the DME Defendants were medically unnecessary and obtained as part of predetermined fraudulent protocols, multiple prescriptions purportedly issued by the Referring Providers were issued on dates that the Referring Providers never even treated the Insureds.

58. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 82.

14

83.     To the extent that there was a contemporaneously dated evaluation report, the evaluation report virtually always failed to explain – and oftentimes failed to identify – the Fraudulent Equipment identified on the prescriptions provided to the DME Defendants and used by the DME Defendants to bill GEICO for the charges identified in Exhibit "1".

59.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 83.

84.     In further keeping with the fact that the prescriptions purportedly issued by the Referring Providers were medically unnecessary, when the Insureds continued to seek treatment with the Referring Providers, the follow-up examination reports generated by the Referring Providers often failed to reference, and virtually never discussed, the Insureds' previously prescribed Fraudulent Equipment, and virtually never provided any indication whether to continue using any of previously prescribed Fraudulent Equipment.

60.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 83.

85.     Even more, and as also explained below in more detail, the prescriptions provided to the DME Defendants were for medically unnecessary Fraudulent Equipment because the DME Defendants purportedly provided Insureds with whatever DME or OD they wanted to provide Insureds, not items that were specifically identified by licensed healthcare providers.

61.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 85.

86.     For the reasons set forth above, and below, in each of the claims identified in Exhibit "1", the DME Defendants falsely represented that the Fraudulent Equipment was provided pursuant to legitimate prescriptions from healthcare providers for medically necessary DME and/or OD, and were, therefore, entitled to collect No-Fault Benefits in the first instance, when, in fact, the prescriptions were for medically unnecessary Fraudulent Equipment issued as part of the DME Defendants insurance fraud scheme.

62.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 86.

87.    In order to obtain access to Insureds so that the DME Defendants could implement and execute their fraudulent scheme and maximize the amount of No-Fault Benefits the DME Defendants could obtain from GEICO and other New York automobile insurers, the DME Defendants entered into collusive agreements with the John Doe Defendants in order to direct prescriptions to Advanced Med Supplies that were illegitimate and for medically unnecessary Fraudulent Equipment.

63.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 87.

88.    Since Advanced Med Supplies' inception, the DME Defendants engaged in various collusive arrangements with the John Doe Defendants pursuant to which Defendants paid  kickbacks or other financial incentives in exchange for being provided prescriptions to fill from the Referring Providers for the Fraudulent Equipment that could then be used to support the Fraudulent Equipment dispensed by Advanced Med Supplies.

64.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 88.

89.    The DME Defendants chose to obtain prescriptions from the Referring Providers through collusive arrangements with the John Doe Defendants because they did not operate like a bona fide DME supplier. Advanced Med Supplies, as a California-based entity, and Elkhettab, as a California resident, were not local to market their services to Insureds or to the Referring Providers. In fact, the DME Defendants could not establish legitimate referral connections because they did not maintain a retail presence in New York State and only obtained a post office box in New York, New York.

65.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 89.

90.    However, the collusive nature of the arrangement goes beyond the simple of payment of money or other financial incentives, but includes (i) payment to fictitious businesses associated with the John Doe Defendants, (ii) the ability to secure the prescriptions without ever meeting the Referring Providers, (iii) obtaining the prescriptions directly from the staff at the Clinics, without any communication or involvement by the Insureds, (iv) providing the Fraudulent Equipment to the Clinic and its staff, with any interaction with the Insureds, and without any interaction with the DME Defendants.

66.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 90.

91.     The collusive arrangements allowed the scheme to remain undetected by the Insured and allowed the DME Defendants to access large volumes of prescriptions that in turn afforded them the opportunity to submit charges for thousands of dollars in Fraudulent Equipment for each Insured to GEICO and other automobile insurers. But for the collusive arrangements, neither the John Doe Defendants nor the Referring Providers would have had no reason to direct a substantial volume of these medically unnecessary prescriptions for Fraudulent Equipment to Advanced Med Supplies to purportedly fill.

67. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 91.

92.     Upon information and belief, the Referring Providers were compensated by the John Doe Defendants, whether financially or through some other economic quid pro quo (e.g. the ability to treat the Insured and independently bill GEICO), for the Referring Providers' willingness to permit prescriptions to be issued in their names and to be given to DME suppliers, including Advanced Med Supplies, rather than given to the Insureds or to a bona-fide DME supplier, who would likely question its legitimacy.

68. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 92.

93.     The collusive relationship between the DME Defendants and John Doe Defendants in relation to the prescriptions are the very kind of arrangement that is prohibited by N.Y. Public Health Law § 238-d, without a specific disclosure to the patient of the financial relationship between the Referring Provider and Advanced Med Supplies. In actuality, no such disclosure required by Public Health Law § 238-d was ever disclosed to the Insureds identified in Exhibit "1". Rather, because of the nefarious nature of the relationship between the DME Defendants and the John Doe Defendants, the arrangements between and among the DME Defendants, John Doe Defendants, and Referring Providers were concealed from the Insureds.

69. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 93.

94.     In keeping with the fact the DME Defendants used collusive relationships with the John Doe Defendants to obtain prescriptions for Fraudulent Equipment: (i) Elkhettab never met the Referring Providers who issued the prescriptions; (ii) the DME Defendants obtained prescriptions directly from the Clinics, without any communications or involvement by the Insureds; and (iii) to the extent that the Insureds were provided with any of the Fraudulent Equipment, the Fraudulent Equipment were provided by staff at the Clinics and without any involvement or interaction by the DME Defendants.

70. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 94.

95.     As a result of these collusive relationships, the Defendants (rather than the Insured or a bona-fide DME supplier) were given the illegitimate prescriptions, which (i) were medically unnecessary Fraudulent Equipment that was not based upon each Insured's individual need; (ii) contained a photocopied signature of the Referring Provider; (iii) were issued on a date the Referring Provider did not treat or otherwise examine the Insured; and/or (iv) were pre-signed/boilerplate with the patient names changed.

71. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 95.

96.     For example, as a result of these collusive relationships the DME Defendants were able to obtain the following pre-signed prescriptions purportedly issued by various Referring Providers: ...

72. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 96(i) through 96(xiv).

97.     The DME Defendants were able to obtain these illegitimate prescriptions for Fraudulent Equipment due to their collusive arrangements with the John Doe Defendants at each of the Clinics, which gave them access to the illegitimate prescriptions.

73. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 97.

98.     In contrast to a bona fide DME supplier, the DME Defendants were willing to obtain illegitimate prescriptions through collusive arrangements and submit the illegitimate prescriptions to support their charges to GEICO and other automobile insurers.

74. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 98.

99.     These Clinics included but were not limited to: (i) 1 Fulton Avenue, Hempstead, New York (the "Fulton Avenue Clinic"); (ii) 115 Meacham Avenue, Elmont, New York (the "Meacham Avenue Clinic"); (iii) 1 Cross Island Plaza, Rosedale, New York (the "Cross Island Plaza Clinic"); and (iv) 108 Kenilworth Place, Brooklyn, New York (the "Kenilworth Place Clinic").

75.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 99.

100.    Although ostensibly organized to provide a range of healthcare services to Insureds at a single location, many of the Clinics operate under the unlawful ownership and control of unlicensed laypersons, with a revolving door of healthcare providers providing treatment to the Insureds and other patients without any continuity of care.

76.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 100.

101.    In fact, GEICO has received billing from many of the Clinics from an ever-changing number of healthcare providers, starting and stopping operations without any purchase  or sale of a "practice"; without any legitimate transfer of patient care from one professional to  another; and without any legitimate reason for the change in provider name, beyond circumventing insurance company investigations and continuing the fraudulent exploitation of New York's No-Fault insurance system.

77.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 101.

102.    For example, GEICO has received billing for purported healthcare services rendered at the Cross Island Plaza Clinic from a "revolving door" of over 140 different healthcare providers.

78.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 102

103.    Similarly, GEICO has received billing for purported healthcare services rendered at the Kenilworth Place Clinic from a "revolving door" of over 110 different healthcare providers.

79.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 103.

104.     Unlicensed laypersons, rather than the healthcare professionals working in the Clinics, create and control the patient base at the Clinics, and direct fraudulent protocols to be used to maximize the generation of revenue for their benefit and the benefit of those with whom they are associated without regard to actual patient care.

80.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 104.

105.     But for the collusive agreements between the DME Defendants and the John Doe Defendants, the John Doe Defendants and the Referring Providers would not have had any reason to direct a substantial volume of medically unnecessary prescriptions to Advanced Med Supplies, a company located in California with no retail presence in New York State.

81.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 105.

106.     Through the DME Defendants participation in collusive arrangements with the John Doe Defendants, the DME Defendants were able to obtain medically unnecessary and otherwise illegitimate prescriptions for Fraudulent Equipment purportedly issued from the Referring Providers, pursuant to predetermined fraudulent protocols.

82.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 106.

107.     In keeping with the fact that the prescriptions provided to the DME Defendants to dispense were for medically unnecessary Fraudulent Equipment obtained as part of predetermined fraudulent protocols, many of the Insureds identified in Exhibit "1" were issued virtually identical prescriptions for predetermined Fraudulent Equipment.

83.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 107.

108.     Similarly, and in keeping with the fact that the DME and OD dispensed by Advanced Med Supplies were not medically necessary and were prescribed and dispensed pursuant to predetermined protocols to maximize profits, Advanced Med Supplies routinely received prescriptions to dispense an array of substantially identical – if not exactly identical – Fraudulent Equipment to Insureds involved in the same accident.

84.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 108.

20

85. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 109(i) through 109(x).

111.    In further keeping with the fact that the prescriptions for Fraudulent Equipment were not medically necessary and were issued pursuant to predetermined protocols established and exploited used by the DME Defendants, at times the prescriptions were purportedly issued on dates that the Insureds never treated with the Referring Providers.

86. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 111.

87. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 112(i) through 112(x).

113.    Furthermore, and in keeping with the fact that the prescriptions for Fraudulent Equipment were not medically necessary and were used by the DME Defendants for financial exploitation of the Insureds' No-Fault Benefits, there were, at times, significant delays between the date on which the prescription was issued and the date on which it was delivered to the Insured.

88. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 113.

89. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 114(i) through 114(x).

116.    In further keeping with the fact that the prescriptions for Fraudulent Equipment purportedly issued to the Insureds identified in Exhibit "1" were not medically necessary but were the result of a predetermined fraudulent protocol, the prescriptions contained vague and generic descriptions for DME and OD, to allow the DME Defendants to choose the specific type of Fraudulent Equipment that they billed GEICO and other New York automobile insurers.

90.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 115.

91.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 116.

117.   Once the DME Defendants obtained the prescriptions purportedly issued by the Referring Providers as a result of the DME Defendants collusive arrangements with the John Doe Defendants, the DME Defendants used the prescriptions to submit bills to GEICO that fraudulently misrepresented what was prescribed by the Referring Providers so as to obtain more No-Fault Benefits.

92.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 117.

118.   In doing so, the DME Defendants did not bill GEICO for medically necessary DME and OD as determined by a licensed healthcare provider. Instead, the DME Defendants unlawfully decided what DME and OD to provide Insureds without a proper prescription from a licensed healthcare provider.

93.   Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 118.

119.   As part of the DME Defendants fraudulent scheme and collusive arrangements with the John Doe Defendants, they utilized the vague and generic prescriptions purportedly issued by the Referring Providers to misrepresent the nature of the items actually prescribed and submitted billing that misrepresented that the Fraudulent Equipment was for DME/OD that was determined by a licensed healthcare provider to be medically necessary for each Insured.

94.   Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 119.

120.   Upon obtaining the vague and generic prescriptions from John Doe Defendants pursuant to the predetermined protocols and collusive arrangements described above, the Defendants were provided with the opportunity to choose one of several different pieces of Fraudulent Equipment, with varying reimbursement rates in the applicable fee schedule, that relate to the vague and generic terms indicated in the prescriptions.

95.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 120.

121.    The ability to choose which specific type of DME and/or OD to provide an individual is specifically reserved for healthcare providers authorized by law to prescribe DME and/or OD.

96.  Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 121.

122.    As an unlicensed healthcare professional, Elkhettab was and is not legally authorized to prescribe or direct that an Insured receive any specific type of DME and/or OD. Similarly, Advanced Med Supplies is not a licensed professional corporation and does not employ any healthcare professionals who can legally prescribe or direct that an Insured receive any specific type of DME and/or OD.

97.  Defendants admit the allegations contained in the foregoing paragraph of the complaint numbered 122.

123.    However, when the DME Defendants received vague and generic prescriptions for Fraudulent Equipment to purportedly provide Insureds, many of the items in the prescriptions were not specific enough to identify a specific item of DME and/or OD that could be provided to the Insureds.

98.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 123.

124.    As a result, whenever the vague and generic prescriptions identified a type of Fraudulent Equipment that had multiple different HCPCS Codes, which are based on the specific and unique features associated with the item, the DME Defendants chose to bill GEICO using specific HCPCS Codes thereby asserting that they purportedly provided those unique pieces of Fraudulent Equipment to the Insureds.

99.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 124.

125.    In a legitimate setting, upon receiving a vague and generic prescription for a type of DME and/or OD, the provider of DME and/or OD would contact the referring healthcare provider to request clarification on the specific items and features necessary to dispense to each patient.

100. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 125.

126. However, in all of the claims identified in Exhibit "1", whenever there was a vague and generic prescription for a type of DME and/or OD, the DME Defendants never contacted the Referring Provider to request clarification. Instead, the DME Defendants made their own determination as to which unique item of Fraudulent Equipment to provide each Insured.

101. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 126.

127. Furthermore, in each and every circumstance where the vague and generic prescriptions allowed the DME Defendants to choose a unique piece of Fraudulent Equipment, the DME Defendants billed GEICO for, and thereby chose to purportedly provide the Insured with, the type of Fraudulent Equipment that resulted in one of the higher maximum reimbursable amounts under the applicable fee schedule.

102. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 127.

128. For example, in many of the prescriptions issued to the DME Defendants that are part of the claims identified in Exhibit "1", the prescriptions requested that the DME Defendants provide such generic items as "Lumbar Braces (LSO)- W/WO Straps" or "Lumbo Sacral Support", without any further specification.

103. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 128.

129. This vague and generic language in the prescriptions from the Referring Providers for lumbar supports directly relates to over 20 different unique HCPCS Codes, each with its own distinguishing features and maximum reimbursable amount, that can be dispensed to Insureds, including: ...

104. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in

the foregoing paragraph of the complaint numbered 129(i) through 129(xxiii).

130.     As an unlicensed healthcare provider, Advanced Med Supplies is and was not legally permitted to determine which of the above-available options were best suited for each Insured that had generic prescriptions for "Lumbar Braces (LSO)- W/WO Straps" or "Lumbo Sacral Support".

105. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 130.

131.     Here, the DME Defendants never contacted any of the Referring Providers whose names appeared on the vague and generic prescriptions for lumbar related Fraudulent Equipment and instead took it upon themselves to decide which specific type of Fraudulent Equipment they would bill GEICO for, and accordingly purportedly provide the Insureds.

106. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 131.

132.     The DME Defendants typically submitted charges of either $502.63 or $844.13 using HCPCS code L0631 pursuant to generic prescriptions for "Lumbar Braces (LSO)- W/WO Straps" or "Lumbo Sacral Support", which has one the higher maximum reimbursable amounts out of the lumbar support items in the Fee Schedule.

107. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 132.

133.     As an additional example, and as identified in Exhibit "1," the DME Defendants regularly submitted charges $607.55 under HCPCS Code L1832 for purportedly supplying Insureds with a "knee brace." Similar to the charges for LSOs, the phrase "knee brace" applies to over 20 different unique HCPCS Codes, each with its own distinguishing features and maximum reimbursable amount, that can be dispensed to Insureds.

108. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 133.

25

134.     As an additional example, and as identified in Exhibit "1," the DME Defendants regularly submitted charges for between $690.23 and $766.12 under HCPCS Code L3671 for purportedly supplying Insureds with a "shoulder brace." Similar to the charges for LSOs and knee orthoses, the phrase "shoulder brace" applies to multiple different unique HCPCS Codes, each with its own distinguishing features and maximum reimbursable amount, that can be dispensed to Insureds.

109. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 134.

135.     As a result, the DME Defendants billed GEICO for purportedly providing Insureds with OD, not based upon determinations by licensed healthcare providers for what was medically necessary but, based upon the decisions by the DME Defendants – who are unlicensed laypersons.

110. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 135.

136.     In addition to choosing the type of OD to purportedly provide insureds based upon vague and generic descriptions, the DME Defendants also billed GEICO for DME and OD based on vague prescriptions that identified two different items of DME.

111. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 136.

137.     In keeping with the fact that the Fraudulent Equipment purportedly provided to Insureds was not based upon decisions made by laypersons, not the determination of a Referring Provider licensed to make medical necessity determinations, certain prescriptions used by the DME Defendants to bill GEICO purported to identify two different types of DME as the HCPCS Code on the prescription did not correspondent with the DME described. identified.

112. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 137.

138.     Upon receipt of the internally inconsistent prescriptions the DME Defendants did not contact the Referring Provider to clarify what was being prescribed. Instead, the DME Defendants purportedly dispensed DME that they wanted to bill GEICO, and other

automobile insurers, using HCPCS Codes that contained high reimbursement amounts, solely for their financial benefit.

113. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 138.

114. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 139(i) through 139(x).

141.    Notably, a TEJSD performs an entirely different function than an EMS Unit or a T.E.N.S. Unit. Specifically, an EMS Unit is used to provide muscle stimulation to decrease muscle spasms or promote muscle growth, a T.E.N.S. Unit provides nerve stimulation to assist with pain management, and a TEJSD is intended to relieve joint pain associated with arthritis.

115. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 140.

116. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 141.

142.    Further, EMS Units are Non-Fee Schedule items appropriately billed under HCPCS E0745. DME Defendants purposefully represented that they provided items under HCPCS Codes E0762 in order to inflate their charges and circumvent having to demonstrate their true acquisition costs or the cost to the general public for items.

117. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 142.

143.    In virtually all of the claims for Fraudulent Equipment identified in Exhibit "1" that are based upon vague and generic language in prescriptions provided by the Referring Providers, the DME Defendants decided the unique type of Fraudulent Equipment to purportedly provide Insureds without any legal authority to do so or any clarification from the prescribing healthcare provider.

27

118. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 143.

144.    In addition to obtaining medically unnecessary prescriptions based upon predetermined fraudulent protocols, collusive arrangements with the John Doe Defendants and dispensing the Fraudulent Equipment without a licensed healthcare provider determining the specific DME/OD was medically necessary, the DME Defendants submitted bills to GEICO that misrepresented the DME/OD provided to the Insureds – to the extent that any DME/OD was actually provided.

119. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 144.

145.    One way in which the DME Defendants submitted bills to GEICO containing misrepresentations involved the type of Fraudulent Equipment provided to Insureds, to the extent any Fraudulent Equipment was provided, and that the Fraudulent Equipment matched the HCPCS Codes identified in the bills to GEICO, when in fact they did not.

120. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 145.

146.    When the DME Defendants submitted bills to GEICO and other New York automobile insurers, they represented that the Fraudulent Equipment was not only provided to the Insureds and that the HCPCS codes used on the bills properly described the type of Fraudulent Equipment that was provided to the Insureds.

121. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 146.

147.    The Medicaid Fee Schedule and WC DME Fee Schedule specifically defines the requirements for each HCPCS Code to bill for DME and/or OD.

122. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 147.

148.    Additionally, Palmetto provides specific characteristics and requirements that DME and OD must meet in order to qualify for reimbursement under a specific HCPCS Code for both Fee Schedule items and Non-Fee Schedule items.

28

123. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 148.

149. By submitting bills to GEICO containing specific HCPCS Codes, the DME Defendants specifically represented that the Fraudulent Equipment they purportedly provided to Insureds appropriately corresponded to the HCPCS Codes contained within each bill.

124. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 149.

150. However, in many of the claims for Fraudulent Equipment identified in Exhibit "1", when the DME Defendants submitted bills to GEICO, they fraudulently represented to GEICO that the HCPCS codes used to bill GEICO were accurate and appropriate for the Fraudulent Equipment purportedly provided to the Insureds – to the extent that any Fraudulent Equipment was actually provided.

125. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 150.

151. For example, the DME Defendants submitted bills to GEICO that fraudulently misrepresented the type of Fraudulent Equipment that they purportedly provided by billing GEICO for "custom fitted" pieces when the Fraudulent Equipment was not customized at all – to the extent that Fraudulent Equipment was actually provided.

126. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 151.

152. As identified in the claims contained within Exhibit "1", the DME Defendants often billed GEICO for Fraudulent Equipment that was purportedly customized for each Insured. Each HCPCS Code, as defined either by the applicable fee schedule or Palmetto, will specify whether the specific item provided to a patient is either "off- the-shelf" or specifically "custom-fitted" for that individual patient.

127. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 152.

29

153.      In order to help clarify the term "custom-fitted", Palmetto defined a custom-fitted orthotic as something that "requires more than minimal self-adjustment at the time of delivery in order to provide an individualized fit, i.e., the item must be trimmed, bent, molded (with or without heat), or otherwise modified resulting in alterations beyond minimal self-adjustment." See Palmetto, Correct Coding – Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised

128. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 153.

154.      One of the key factors in identifying a "custom-fitted" orthotic is whether the item requires "minimal self-adjustment" or "substantial modification." Minimum self-adjustment, which for an off-the-shelf orthotic means adjustment that the "beneficiary, caretaker for the beneficiary, or supplier of the device can perform and that does not require the services of a certified orthotist (that is, an individual who is certified by the American Board for Certification  in Orthotics and Prosthetics, Inc., or by the Board for Orthotist/Prosthetist Certification) or an individual who has specialized training. For example, adjustment of straps and closures, bending or trimming for final fit or comfort (not all-inclusive) falls into this category." See Palmetto, Correct Coding – Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised.

129. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 154.

155.      By contrast, a substantial modification, which is required for a custom-fitted orthotic, is defined as "changes made to achieve an individualized fit of the item that requires the expertise of a certified orthotist or an individual who has equivalent specialized training in the provision of orthotics such as a physician, treating practitioner, an occupational therapist, or physical therapist in compliance with all applicable Federal and State licensure and regulatory requirements. A certified orthotist is defined as an individual who is certified by the American Board for Certification in Orthotics and Prosthetics, Inc., or by the Board for Orthotist/Prosthetist Certification." See Palmetto, Correct Coding – Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised.

130. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 155.

156.     As shown in the claims identified within Exhibit "1", the DME Defendants often billed for Fraudulent Equipment that was purportedly "custom-fitted" for each Insured when – and to the extent that Fraudulent Equipment was actually provided – the items were never custom fitted, as that term is defined by Palmetto.

131. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 156.

157.     Based upon the prescriptions allegedly issued by the Referring Providers, the DME Defendants submitted numerous bills to GEICO for customized OD, including: (i) lumbar orthotics under HCPCS Code L0627 with a charge of $322.98; (ii) lumbar orthotics under HCPCS Code L0631, typically with a charge of $806.64; (iii) lumbar orthotics under HCPCS Code L0637, typically with a charge of $844.13; (iv) cervical collars under HCPCS Code L0190, typically with c charge of $311.75; (v) knee orthotics under HCPCS Code L1832, typically with a charge of $607.55; and (vi) shoulder orthotics under HCPCS Code L3671 with a charge of $690.23 or $766.12.

132. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 157.

158.     The products assigned to HCPCS Codes L0627, L0631, L0637, L0190, L1832, and L3961 are types of orthoses that are customized to fit a particular patient by an individual with expertise, not the prefabricated, off-the-shelf products that could be adjusted by the patients (by simply tightening the straps) and which were dispensed by the DME Defendants.

133. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 158.

159.     Instead, to the extent that the DME Defendants provided any Fraudulent Equipment billed to GEICO as custom-fitted OD, including the charges for HCPCS Codes L0627, L0631, L0637, L0190, L1832, and L3961 the Fraudulent Equipment was provided without taking any action to custom-fit the OD to the Insureds. To the extent that the DME Defendants attempted to make any adjustments to the DME received by Insureds identified in Exhibit "1", the DME Defendants only provided minimal self-adjustment, as defined by Palmetto, which only supports charges for off-the-shelf items.

31

134. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 159.

160.     Further illustrative of the fact that the DME Defendants misrepresented that they custom-fitted OD purportedly provided to Insureds and billed to GEICO, Elkhettab is not a certified orthotist and did not complete sufficient training to become a certified orthotist.

135. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 160 except admits "Elkhettab is not a certified orthotist."

161.     In addition to billing for Fraudulent Equipment and falsely representing that the DME Defendants provided Insureds with customized OD, the DME Defendants submitted bills to GEICO that fraudulently inflated the reimbursement rate for the Fraudulent Equipment purportedly provided to the Insureds, to the extent that any DME was actually provided.

136. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 161.

162.     For example, when DME Defendants submitted bills to GEICO for Non-Fee Schedule items, namely exercise equipment dispensed and billed for under HCPCS A9300, DME Defendants requested reimbursement rates that were unique and purportedly based upon the specific Fraudulent Equipment purportedly provided to Insureds.

137. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 162.

163.     As indicated above, under the No-Fault Laws, Non-Fee Schedule items are reimbursable as the lesser of: (i) 150% of the legitimate acquisition cost; or (ii) the cost to the general public for the same item.

138. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 163.

164.    By submitting bills to GEICO for Non-Fee Schedule items, DME Defendants fraudulently represented that they requested permissible reimbursement amounts that were calculated as <u>the lesser of</u>: (i) 150% of the legitimate acquisition cost; or (ii) the cost to the general public for the specific item.

139. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 164.

165.    Instead, the DME Defendants submitted bills to GEICO with charges that significantly inflated the permissible reimbursement amount of Non-Fee Schedule items in order to maximize the amount of No-Fault Benefits they were able to obtain from GEICO and other automobile insurers.

140. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 165.

166.    The DME Defendants were able to perpetrate this scheme to fraudulently overcharge Non-Fee Schedule items by providing Insureds – to the extent they actually provided any Fraudulent Equipment – with low-cost and low-quality Fraudulent Equipment for which the acquisition cost was low.

141. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 166.

167.    When the DME Defendants submitted bills to GEICO seeking No-Fault Benefits for Non-Fee Schedule items, the charges fraudulently misrepresented that they were calculated based on Defendants' acquisition cost for purportedly high-quality items. In actuality, DME Defendants' legitimate acquisition costs were for the low-quality items and, therefore, significantly less.

142. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 167.

168.    Pursuant to the scheme designed to maximize their profits, the DME Defendants purposefully attempted to conceal their efforts to overcharge GEICO for Non-Fee Schedule items by never submitting a copy of their acquisition invoices in conjunction with their bills.

33

143. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 168.

169.    The DME Defendants did not include invoices showing their legitimate cost to acquire the low-cost and low-quality Non-Fee Schedule items with the bills submitted to GEICO because the invoices would have shown that the permissible reimbursement amounts were significantly less than the charges listed in the bills.

144. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 169.

170.    As part of this scheme, the charges submitted to GEICO for Non-Fee Schedule items identified in Exhibits "1" virtually always misrepresented the permissible reimbursement amount.

145. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 170.

171.    The DME Defendants' misrepresentations regarding Non-Fee Schedule items inflated the charges submitted to GEICO and resulted in the DME Defendants obtaining payment from GEICO under the New York "No-Fault" laws to which the DME Defendants were never  entitled.

146. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 171.

172.    To support their fraudulent charges, the DME Defendants systematically submitted or caused to be submitted thousands of NF-3 forms, HCFA-1500 forms and/or treatment reports to GEICO through and in the name of Advanced Med Supplies, seeking payment for the Fraudulent Equipment.

147. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 172 except admit Defendants submitted or caused to be submitted NF-3 forms, HCFA-1500 forms and/or treatment reports to GEICO through and in the name of Advanced Med Supplies.

34

173.     The NF-3 forms, HCFA-1500 forms, and treatment reports that the DME Defendants submitted or caused to be submitted to GEICO were false and misleading in the following material respects: ...

148. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 173(i) through (iv).

174.     The DME Defendants are legally and ethically obligated to act honestly and with integrity in connection with the provision of DME and OD to Insureds, and their actual submission of charges to GEICO.

149. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 174.

175.     To induce GEICO to promptly pay the charges for Fraudulent Equipment, the DME Defendants have gone to great lengths to systematically conceal their fraud.

150. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered  175.

176.     Specifically, the DME Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the provision of the Fraudulent Equipment was pursuant to an insurance fraud scheme that was designed and implemented to exploit the patients for financial gain so as to benefit the Defendants, including others not presently known (i.e. the John Doe Defendants), without regard for genuine patient care.

151. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 176, except that Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 176 which refers to John Doe Defendants.

177.     Additionally, the DME Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the provision of the Fraudulent Equipment was pursuant to an insurance fraud scheme, which included dispensing Fraudulent Equipment that was not medically necessary and prescribed pursuant to predetermined fraudulent protocols, including prescriptions secured through collusive arrangements, and

35

were otherwise illegitimate because they contained photocopied or otherwise duplicated signatures.

152. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 177.

178.    Furthermore, the DME Defendants knowingly misrepresented and concealed facts to prevent GEICO from discovering that the provision of the Fraudulent Equipment dispensed was pursuant to an insurance fraud scheme in which decisions were made by laypersons, without legal authority to issue a prescription, and not by an actual healthcare provider.

153. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 178.

179.    In addition, the DME Defendants knowingly misrepresented and concealed facts to prevent GEICO from discovering that the HCPCS Codes for Fraudulent Equipment contained in the bills submitted by the Defendants to GEICO did not accurately reflect the type of Fraudulent Equipment purportedly provided to the insureds and/or the charges to GEICO for Non-Fee Schedule Fraudulent Equipment were not less than or equal to the maximum permissible reimbursement amount for the DME/OD dispensed.

154. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 179.

180.    The billing and supporting documentation submitted by the DME Defendants, when viewed in isolation, did not reveal its fraudulent nature.

155. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 180.

181.    The DME Defendants hired law firms to pursue collection of the charges associated with the Fraudulent Equipment from GEICO and other automobile insurers. These law firms routinely filed expensive and time-consuming litigation against GEICO and other insurers if the charges were not promptly paid in full.

156. Defendants deny any knowledge sufficient to form a belief as to the truth or accuracy of each and every allegation contained in the foregoing paragraph of the complaint numbered 181 except admit that Defendants hired law firms to pursue

collection of overdue bills from GEICO and other automobile insurers.

182.    The DME Defendants' collection efforts through the filing and prosecution of numerous separate No-Fault collection proceedings, which proceedings may continue for years, is an essential part of their fraudulent scheme, since they know it is impractical for an arbitrator or civil court judge in a single No-Fault arbitration or civil court proceeding, typically involving a single bill, to uncover or address DME Defendants' large-scale, complex fraud scheme involving numerous patients across numerous different clinics located throughout the metropolitan area. The purpose of the mass filings of no-fault collection proceedings is to obtain adjudication on the fraudulent billing while obfuscating the fraudulent activity and further perpetuating the RICO enterprises.

157. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 182.

183.    In fact, DME Defendants continue to have legal counsel pursue collection against GEICO and other insurers without regard for the fact that the DME Defendants have been engaged in widespread fraud.

158. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 183 except admit Defendants continue to have legal counsel pursue collection against GEICO and other insurers.

184.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to, and did cause GEICO to rely upon them. As a result, GEICO incurred damages of more than $600,000.00 based upon the fraudulent charges representing payments made by GEICO to DME Defendants.

159. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 184.

185.    Based upon the DME Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

160. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 185.

## FIRST CAUSE OF ACTION
### Against Advance Medical Supplies
### (Declaratory Judgment Under 28 U.S.C. Section 2201)

161. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

162. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 186.

163. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 187.

164. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 188.

165. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 189.

166. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 190.

167. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 191.

168. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 192.

## SECOND CAUSE OF ACTION
### Against Elkhettab
### (Violation of RICO, 18 U.S.C. Section 1962(c))

169. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

170. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 193.

171. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 194.

172. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 195.

173. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 196.

174. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 197.

175. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 198.

176. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 199.

**THIRD CAUSE OF ACTION**
**Against Elkhettab and John and Jane Doe Defendants "1" – "10"**
**(Violation of RICO 18 U.S.C. Section 1962(d))**

177. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

178. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 200.

179. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 201.

180. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 202.

181. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 203.

182. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 204.

183. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 205.

184. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 206.

## FOURTH CAUSE OF ACTION
**Against Elkhettab and Advance Med Supplies**
**(Common Law Fraud)**

185. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

186. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 207.

187. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 208.

188. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 209.

189. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 210.

190. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 211.

191. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 212.

192. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 213.

## FIFTH CAUSE OF ACTION
### Against Advanced Med Supplies and Elkhettab
### (Unjust Enrichment)

193. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

194.  Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 214.

195. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 215.

196. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 216.

197. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 217.

198. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 218.

199. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 219.

200. Defendants deny each and every allegation contained in the foregoing paragraph of the complaint numbered 220.

## **JURY DEMAND**

201. Defendant similarly demands a jury trial and does not admit or deny paragraph numbered 220.

202. Defendant denies the WHEREFORE clause,

    a. Defendant denies Plaintiff is entitled to the relief under WHEREFORE clause A.

    b. Defendant denies Plaintiff is entitled to the relief under WHEREFORE clause B.

    c. Defendant denies Plaintiff is entitled to the relief under WHEREFORE clause C.

    d. Defendant denies Plaintiff is entitled to the relief under WHEREFORE clause D.

    e. Defendant denies Plaintiff is entitled to the relief under WHEREFORE clause E.

THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK

## AFFIRMATIVE DEFENSES

As Affirmative Defense 1. **No RICO, No RICO Enterprise, Lack of Subject Matter Jurisdiction**

203. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

204. Plaintiffs' civil RICO claims are barred, in whole or in part, because there is no 'enterprise' within the meaning of 18 U.S.C. § 1961(4).

205. Defendants have not engaged in fraudulent conduct.

206. Defendants have not engaged in predicate acts or criminality.

207. Defendant have not violated RICO, 18 U.S.C. § 1962(c) or (d).

208. There was no willfulness, fraud, or malice by Defendants.

209. Plaintiffs have not adequately alleged, and cannot establish, the existence of any association-in-fact enterprise because there is no group of persons associated together for a common purpose with relationships among them and longevity sufficient to permit them to pursue that purpose.

210. There is no association-in-fact enterprise as required to state a claim under RICO.

211. No continuity or relatedness in acts, framed as an affirmative bar.

212. There is no distinct enterprise apart from the alleged fraud.

213. Defendants alleged acts do not qualify as racketeering.

43

214. There is no agreement to violate RICO.

215. Plaintiff's allegation of harm is too remote or not directly caused by RICO violation.

216. Thus, the Court does not have subject matter jurisdiction over the Complaint.

## As Affirmative Defense 2. **Lack of Person/Enterprise Distinctness**

217. Plaintiffs' RICO claims under 18 U.S.C. § 1962(c) are barred, in whole or in part, because, as pleaded in the Complaint, the alleged RICO "person(s)" are not distinct from the alleged RICO "enterprise."

218. The complaint alleges that Advanced Medical Supplies Inc. and Fatima Elkhettab, a shareholder, both constitute the RICO person(s) and, at the same time, constitute the alleged RICO enterprise.

219. Plaintiffs fail to plead a RICO enterprise that is legally distinct from the RICO person(s), as required by 18 U.S.C. § 1962(c).

## As Affirmative Defense 3. **Statute of Limitations**

220. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

221. Plaintiff's claims are barred, in whole or in part, by the applicable statute of Limitations.

44

As Affirmative Defense 4. **Joinder**

222. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

223. Plaintiff failed to join parties required by Federal Rule of Civil Procedure 19.

As Affirmative Defense 5. **Estoppel Issue/Claim Preclusion**

224. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

225. Plaintiff's causes of action are barred, in whole or in part, by the doctrine of res judicata, and claim preclusion.

226. Plaintiff's claims are barred, in whole or in part, by the doctrine of collateral estoppel, issue preclusion.

227. Plaintiff's causes of action were already reviewed and appropriately adjudicated by Plaintiff.

As Affirmative Defense 6. **Mitigation**

228. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

229. Plaintiff's recovery is barred, in whole or in part, by their failure to mitigate damages.

As Affirmative Defense 7. **Election, Release and Payment**

230. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

231. Plaintiff's recovery is barred, in whole or in part, by release and payment.

232. Plaintiff's recovery is barred by the doctrine of election of remedies.

As Affirmative Defense 8. **Laches, Good Faith, Unclean Hands, Equitable Remedies and Defenses**

233. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

234. Plaintiff's recovery is barred, in whole or in part, by laches.

235. Plaintiff's recovery is barred by unclean hands.

236. Plaintiff's recovery is barred by the doctrine of election of remedies.

As Affirmative Defense 9. **Accord and Satisfaction**

237. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

238. Plaintiff's claims are barred by the doctrine of accord and satisfaction.

As Affirmative Defense 10. **Failure to State a Claim**

239. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

240. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

As Affirmative Defense 11. **Administrative Remedies**

241. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

242. Any damages sustained by Plaintiffs were proximately caused by its own improper conduct, negligence or omissions.

As Affirmative Defense 12. **Waiver and Assumption**

243. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

244. Any damages sustained by Plaintiff were waived and/or proximately caused by its own improper conduct, negligence or omissions.

As Affirmative Defense 13. **Administrative Regulations**

245. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

246. Violations of administrative regulations, guidance, or policy do not confer a private cause of action.

As Affirmative Defense 14. **Ratification/Acquiescence**

247. Defendant repeats and realleges each and every statement if not a denial set forth above as if fully set forth at length herein

248. Plaintiffs ratified the allegedly fraudulent conduct by accepting benefits or failing to repudiate it timely.

249. Plaintiffs acquiesced to the conduct by their silence or inaction.

250.  \* \* \* Defendants deny any paragraph not otherwise denied in the above referenced complaint.

**THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK**

WHEREFORE, Defendants demand Judgment dismissing the Plaintiffs' Complaint, all together with such other and further relief as shall be just and proper under the circumstances including, but not limited to, the costs of this action and attorneys' fees

DATED AT:     Boca Raton, Florida
              February 9, 2026

_____
/s/ Cory Hal Morris (CM5225)
THE LAW OFFICES OF CORY H. MORRIS
CORY H. MORRIS, P.C.
2295 NW CORPORATE BOULEVARD, SUITE 117
BOCA RATON, FLORIDA 33431

_____

*Attorneys for Defendants*

VICTOR JOHN YANNACONE, JR., *of counsel*
Email: barrister@yannalaw.com

48