

ATTORNEYS AT LAW

WWW.RIVKINRADLER.COM

**MICHAEL VANUNU**

(516) 357-3337
michael.vanunu@rivkin.com

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000  F 516.357.3333

March 30, 2026

**VIA ECF**

Honorable Lara K. Eshkenazi
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Gov't Emps. Ins. Co., et al v. Advanced Medical Supplies Inc., et al*
         Docket No. 1:25-cv-06135(MKB)(LKE)

Dear Judge Eshkenazi:

This firm represents Plaintiffs (collectively, "GEICO" or "Plaintiffs") in the above-referenced action, and we submit this opposition in response to the letter motion by Defendants Advanced Medical Supplies ("Advanced Med") and Fatima Elkhettab ("Elkhettab") (collectively, "Defendants") to quash two subpoenas GEICO issued to (i) Strauss Terry Law Group PLLC ("Strauss Terry"); and (ii) Citizens Bank ("Citizens") (collectively, the "Subject Subpoenas"). See D.E. 17. Defendants' untimely motion to quash should be denied as meritless. Defendants' motion shows a fundamental misunderstanding of the claims here, what constitutes "relevant" evidence, and ignores the decisions within this District that involve highly analogous cases containing subpoenas that are extremely similar to the Subject Subpoenas. Defendants' motion is nothing but an attempt to prevent Plaintiffs from obtaining records that would support their fraud allegations.

By way of background, Plaintiffs' Complaint asserted claims against Defendants for civil RICO under 18 U.S.C. § 1962(c) and (d), common-law fraud, and unjust enrichment, seeking to recover more than $600,000.00 that Defendants stole from GEICO through the submission of fraudulent charges for durable medical equipment ("DME"). See D.E. 1, ¶¶ 193, et seq. GEICO also seeks a declaratory judgment that Defendants are not entitled to receive over $700,000.00 in pending and outstanding claims for No-Fault Benefits because of the fraud alleged in the Complaint. Id., ¶¶ 186-192. As it is impossible to fully describe every aspect of Defendants' fraudulent scheme in this letter, Plaintiffs respectfully refer the Court to the Complaint for the full contours of Defendants' fraudulent scheme. Briefly, the Complaint alleges:

(i)    Defendants' scheme began in 2021, and involved the Defendants submission of more than $2.3 million in fraudulent billing to GEICO for medically unnecessary, illusory, and non-reimbursable DME purportedly provided to Insureds. See D.E. 1, ¶¶ 1-3.

(ii)   As an integral part of the fraudulent scheme, Defendants obtained prescriptions for medically unnecessary DME that were purportedly issued by health care providers. The Defendants used the medically unnecessary prescriptions as the basis to submit the massive amount of billing to GEICO. In reality, the Defendants obtained the medically unnecessary prescriptions through collusive financial arrangements with unidentified others that operated at the various one-stop shop medical offices ("No-Fault Clinics") and who were able to steer prescriptions purportedly issued

March 30, 2026
Page 2

by the healthcare providers to the Defendants. The Complaint provides details supporting the collusive financial arrangement allegations that highly questions the legitimacy of the prescriptions, including specific examples of photocopied provider signatures on the prescriptions, the high-volume nature of the No-Fault Clinics that were the source of the prescriptions, and allegations detailing how the kickback/financial arrangement scheme operated. See Id., ¶¶ 58-105.

(iii)   The Complaint details how the prescriptions for Fraudulent Equipment were medically unnecessary and issued in a predetermined nature because: (a) the prescriptions were issued on days that the Referring Providers did not treat the Insureds; (b) the Fraudulent Equipment was purportedly delivered weeks (and up to 2 months) after the prescription date; (c) the prescriptions were not based on each individual's condition; and (d) the prescriptions included vague and generic terms that did not specifically identify what was medically necessary. See Id, ¶¶ 106-143.

(iv)   Once the Defendants obtained the medically unnecessary and vague prescriptions, the Defendants improperly chose a specific type of DME to provide Insureds, and submitted bills containing fraudulent misrepresentations to inflate the amount of reimbursement that they could receive from GEICO. See Id, ¶¶ 106-143. In addition, the Defendants submitted bills to GEICO that fraudulently misrepresented the DME purportedly provided to Insureds to maximize the amount of No-Fault benefits that they could obtain. See Id, ¶¶ 117-171.

After discovery commenced, GEICO sought financial discovery related to Advanced Med by seeking records related to Advanced Med's corporate account, and records related to outgoing payments for Advanced Med's funds that were held in the attorney IOLA account of Strauss Terry.

## I.   Defendants' Motion Should Be Denied as Untimely

Defendants provide no reason why this Court should consider their belated motion to quash. The Subject Subpoenas had a return date of March 24, 2026, and Defendants were put on notice of the Subject Subpoenas on March 3, 2026[1], three weeks prior to the return date. See D.E. 17-1; 17-3; 17-5. Even more, Defendants were aware that Plaintiffs would not withdraw the Subject Subpoenas after the March 6, 2026, meet and confer. See D.E. 17. At the March 6, 2026, meet and confer, Defendants stated they would move to quash the Subject Subpoenas. However, despite being aware of the Subject Subpoenas for more than three weeks, Defendants filed their untimely motion on March 27, 2026, more than two days after the Subject Subpoenas' return date of March 24, 2026, at 10:00 a.m. Id.

This Court should deny Defendants' motion as untimely. Fed. R. Civ. P. 45(d)(3) permits an application to quash or modify a subpoena "on timely motion". "[I]t is well settled in the Second Circuit that a motion to quash a subpoena to be 'timely', it 'must be made prior to the return date of the subpoena." Est. of Tillman v. City of New York, 345 F.R.D. 379, 385 (E.D.N.Y. 2024) (quoting City of New York v Golden Feather Smoke Shop, Inc., 2009 U.S. Dist. LEXIS 149541, at *2 (E.D.N.Y. Dec 21, 2009)); see also Fed.

---

[1] While there are a total of three subpoenas that were issued, two subpoenas are duplicates and were issued to Citizens. Defendants were first notified of Plaintiffs' intent to serve Citizens and Strauss Terry on March 3rd. The first Citizens subpoena, dated March 3rd, was issued to "Citizens Bank". Thereafter, Plaintiffs' counsel received a call from Citizens that the subpoena could not be complied with, and a new subpoena needed to be reissued to "First Citizens Bank", the proper corporate entity. On March 11, 2026, Plaintiffs reissued an identical subpoena to Citizens, which was addressed to "First Citizens Bank". Defendants were notified of the second identical subpoena through notice provided on March 11th. See D.E. 17.

March 30, 2026
Page 3

R. Civ. P. 45(d)(2)(B); <u>Valentine v. Hamptons</u>, 2025 U.S. Dist. LEXIS 115745, at *5 (E.D.N.Y. 2025); <u>Am. Transit Ins. Co. v. Pierre</u>, 2025 U.S. Dist. LEXIS 168071, at *5-*9 (E.D.N.Y. 2025) (all discussing how a party's motion to quash a subpoena after the subpoena's return date was untimely).

## II.      The Court Should Deny the Defendants' Motion in its Entirety

Defendants, as the movants, are required to show that the Subject Subpoenas are overly broad or that compliance would either disclose privileged or confidential information or would be unduly burdensome. <u>See</u> Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); <u>Vale v. Great Neck Water Pollution Control Dist.</u>, 2016 U.S. Dist. LEXIS 2440 at *6 (E.D.N.Y. Jan 8, 2016). Defendants failed to meet this burden. An objective review of the Subject Subpoenas against the allegations in the Complaint show the information sought by the Subject Subpoenas are relevant, reasonable, and proportionate to the needs of this case.

Here, the Subject Subpoenas seek relevant information as the documents sought have a "tendency to make a fact more or less probable than it would be without the evidence and . . . is of consequence in determining the action." <u>See</u> <u>Vaigasi v. Solow Mgmt. Corp.</u>, 2016 U.S. Dist. LEXIS 18460, at *11 (S.D.N.Y Feb. 16, 2016). Specifically, the information sought through the Subject Subpoenas relate to Advanced Med's financial records. The subpoena to Citizens is only for Advanced Med's corporate accounts, not for Elkhettab's personal account. In addition, the subpoena to Strauss Terry is specifically related to disbursements on behalf of Advanced Med from Strauss Terry's IOLA/Trust Account, and communication related to those disbursements. For example, these communications would involve directions from Defendants or others on where or how to distribute the funds received by Strauss Terry.

The Subject Subpoenas' requests for documentation and communications are clearly relevant to: (i) establish support for Plaintiffs' claims that medically unnecessary prescriptions were obtained through Defendants' collusive financial arrangements with unidentified others that operated at the various No-Fault Clinics, including the John Doe Defendants; (ii) establish Defendants motive to participate in a fraudulent billing scheme; (iii) potentially identify John Doe Defendants that were alleged in the Complaint to assist the Defendants with the fraudulent scheme: (iv) the extent to which Defendants' revenues are derived from fraudulent no-fault insurance billing, which is directly relevant to the pattern element of GEICO's RICO claims; (v) the extent to which the Defendants, including the individual owner, were unjustly enriched by virtue of the fraudulent billing scheme; and (vi) the specifics, participants, and overall scope of Defendant's predetermined fraudulent protocols.  <u>See, e.g.</u>, <u>State Farm v. CPT Med. Servs.</u>, 2008 U.S. Dist. LEXIS 141118 (E.D.N.Y. June 24, 2008); <u>State Farm Mut. Auto. Ins. Co. v. Fayda</u>, 2015 U.S. Dist. LEXIS 162164 (S.D.N.Y. Dec. 3, 2015).

The Subject Subpoenas are reasonable and proportional to the needs of the case as the time period contained in the Subject Subpoenas directly relate to the time period of the fraud alleged in the Complaint. <u>See</u> <u>Gov't Emps. Ins. Co. v. Advanced Supplies of NY Corp.</u>, Dkt. No 1:25-cv-04765-LDH-JAM, at Nov. 14, 2025, Text Order (E.D.N.Y.) (denying motion to quash subpoenas for corporate defendants' bank records and stating that "time-period of two and a half years is likewise reasonable because it relates to the time in the Complaint").

Against this backdrop, Defendants' arguments to quash the Subject Subpoenas are baseless and contrary to numerous decisions in this District on the exact same issue. For example, Defendants' incorrectly claim that the subpoena to Citizens is unduly burdensome. However, Defendants are not producing responses to the Citizens subpoena. Citizens is the one who is responding to the Subpoena and no one from Citizens has indicated that responding to the subpoena is burdensome. Contrary to Defendants' argument, there is

March 30, 2026
Page 4

no undue burden on Citizens in making a production in response to the Subpoena as they are accustomed to making such productions on a routine basis. Defendants' have not shown that this situation is a circumstance that requires the bank to differ from its routine production.

The Court should also disregard Defendants' argument about "an unfair market advantage" and "revealing trade secrets" as nonsensical. Obtaining financial records, either from Citizens or Strauss Terry, cannot provide GEICO with information regarding settlement with other insurers. At the outset, Defendants' argument ignores that all bills submitted to GEICO, and other New York automobile insurers, are bound by the payment requirements of New York's No-Fault Laws (N.Y. Ins. Law. §§5101, et. seq.; 11 N.Y.C.R.R. 65). In addition, production of bank records showing payments made to Advanced Med, would not identify how Advanced Med discounted specific charges. Similarly, records from Strauss Terry would not show any information that Defendants are concerned with as the subpoena only discusses records related to outgoing payments from Strauss Terry. These concerns are not a valid basis for quashing the Subject Subpoenas, and Defendants have not provided any cases to support their position.

Further, the Court should reject Defendants' arguments that the Subject Subpoenas should be quashed because they seek personal and confidential information. The Subject Subpoenas do not seek Elkhettab's personal information, even though such records are relevant, reasonable, and proportional to the needs of this case. See, e.g., State Farm Mut. Auto. Ins. Co. v. Boris Ripa, M.D., Dkt No. 17-cv-3202, D.E. 35 (E.D.N.Y. Jan. 23, 2018) (permitting subpoena to individual defendant's personal account). Defendants' privacy concern can be addressed through the issuance of a Confidentiality Order. However, during a meet and confer call on March 24, 2026, regarding Plaintiffs' proposed discovery confidentiality order, Defendants took the position that no confidentiality order should be issued in this case and only patient medical records should be confidential from filings. Defendants cannot have it both ways – complain that certain documents not be disclosed because they are private and confidential, but also disagree with submitting a confidentiality order because. Notwithstanding Defendants' inconsistent positions, GEICO remains prepared to submit a Confidentiality Order in this case and will agree that records produced in response to the Subject Subpoenas be confidential under a future confidentiality order issued by this Court. See Fayda, 2015 U.S. Dist. LEXIS 162164, at * 16.

Additionally, Defendants' attorney-client privilege arguments are inaccurate and should be rejected. "A showing that the privilege is applicable and has not been waived must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence." Bloomingburg Jewish Educ. Ctr.  v. Vill. of Bloomingburg, 171 F. Supp. 3d 136, 143 (S.D.N.Y. 2016) (internal quotations omitted). Defendants' claim using conclusory statements that the Subject Subpoenas seek attorney-client privilege is insufficient to prove the applicability of the attorney-client privilege. See Id. at 142-143 (denying motion to quash because attorney-client privilege objections were conclusory). Even more, the Subject Subpoenas do not seek any documents or communications that arguably fall within the privilege. The subpoena to Stauss Terry does not seek communications for the purpose of providing leading advice. It only seeks copies of financial transactions and communications regarding those transactions after money was received by Strauss Terry, which are not privileged. See Edebali v. Bankers Standard Ins. Co., 2017 U.S. Dist. LEXIS 110665, at * 11 (E.D.N.Y. July 17, 2017). Notably, during the March 6, 2026, meet and confer, counsel for Defendants indicated he will respond to Strauss Terry subpoena but took the position that there may be privilege concerns with respect to settlements with other healthcare providers. The rider to the Strauss Terry subpoena is specifically crafted to relate to disbursements and communications only related to those disbursements, communications that do not seek or provide legal advice.

March 30, 2026
Page 5

Defendants offer no argument or evidence to differentiate this case from the numerous decisions within this District that have routinely held in highly analogous No-Fault insurance fraud cases that a corporate defendant's bank records are relevant and freely discoverable. See, e.g., Advanced Supplies of NY Corp., supra; Gov't Emps. Ins. Co. et al. v. Shimunov, et al., Dkt. No. 2:24-cv-00063-JMA-AYS, at Sept. 4, 2024, Text Order (E.D.N.Y.); Gov't Emps. Ins. Co. et al. v. Health Choice Pharmacy, Inc. et al., Dkt. No. 1:22-cv-02867-KAM-MMH, at Nov. 23, 2023, Text Order (E.D.N.Y.); Gov't Emps. Ins. Co., et al. v. Zilberman, D.C., et al., Dkt. No. 1:20-cv-00209(FB)(RML) at May 28, 2020, Text Order (E.D.N.Y.); Gov't Emps. Ins. Co., et al. v. Albert J. Ciancimino, M.D., et al., Dkt. No. 1:19-cv-03933(LDH)(SJB) at D.E. 43 (E.D.N.Y. Jan. 21, 2020); Gov't Emps. Ins. Co., et al. v. Yoo, M.D., et al., Dkt. No. 1:18-cv-05735(ERK)(SJB) at Apr. 11, 2019 Order (E.D.N.Y.) (all permitting disclosure of corporate financial records in similar No-Fault insurance fraud actions). This case is no different and therefore the Court here should draw the same conclusion.

### III.    Defendants' Remaining Arguments are Unavailing

Defendants incorrectly argue that the Subject Subpoenas are improper because they were premature. Plaintiffs' noticed and served the Subject Subpoenas after the Parties conducted a Rule 26(f) conference and filed a proposed discovery plan. See D.E. 14. Plaintiffs were permitted to notice and serve the Subject Subpoenas after the Rule 26(f) conference as there was no stipulation or other Court Order indicating discovery sequencing. See Fed. R. Civ. P. 26(d); D.E. 15. Defendants' do not provide any statue or caselaw to show that the Subject Subpoenas were premature or that party discovery must commence prior to serving non-party subpoenas. Instead, Defendant overstates the holding in In re Subpoena Issued to Dennis Friedman, which is factually dissimilar to this action. 350 F.3d 65 (2d Cir. 2003). In re Subpoena Issued to Dennis Friedman involved a deposition subpoena to defendant's prior counsel, and discusses a "flexible approach to lawyer depositions whereby [the Court] takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship". Id. at 71-72. The Second Circuit does not discuss the order of how discovery is to be conducted.

Lastly, Defendants' arguments that the Subject Subpoenas did not provide reasonable time for compliance is contrary to existing caselaw. The Subject Subpoenas' three (3) week return period for compliance is more than sufficient. "Many courts, including the Eastern District, have found fourteen days from the date of service as a presumptively reasonable period to comply." Am. Transit Ins. Co. v. Pierre, 2025 U.S. Dist. LEXIS 168071, *6 (E.D.N.Y. Aug. 28, 2025) (citing In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31, 2010 U.S. Dist. LEXIS 40653, at *5 (E.D.N.Y. Feb. 5, 2010)). Notably, Defendants' cannot argue that Citizens needs more time to respond to the subpoena as they are not responding on Citizens' behalf, and there is no privilege concern for the records sought from Citizens. Plaintiffs consent to an extension of time for Strauss Terry to comply with the subpoena, and would have similarly consented without judicial intervention. However, no such extension was requested by Defendants' counsel or from Strauss Terry.

Accordingly, Plaintiffs respectfully request that Defendants' motion be denied in its entirety.

Respectfully submitted,

RIVKIN RADLER LLP

*Michael Vanunu*

Michael Vanunu, Esq.

cc:    All Counsel, via ECF